## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1). KAY ELECTRIC COOPERATIVE, an Oklahoma Rural Electric Cooperative, 2). KAY COUNTY RURAL WATER DISTRICT No. 3, an Oklahoma Rural Water District; <br><br> Plaintiffs, <br><br> v. <br><br> 1). THE CITY OF NEWKIRK, OKLAHOMA, a Municipality; 2). THE NEWKIRK MUNICIPAL AUTHORITY, a public trust; <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CIV-347-C |

## COMPLAINT

Kay Electric Cooperative ("Kay Electric"), an Oklahoma Rural Electric Cooperative, and Kay County Rural Water District No. 3 ("RWD"), an Oklahoma Rural Water District, for their claims for relief against the Defendants, the City of Newkirk, Oklahoma, a municipality, and the Newkirk Municipal Authority, a public trust (Collectively " Defendants" or "Newkirk" or "City"), allege and state as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Kay Electric is a rural electric not for profit distribution cooperative organized under the laws of Oklahoma for the express purpose of providing electricity and serving member consumers in and around Kay County. Kay Electric provides electrical service throughout Kay County including formerly rural areas that

have been annexed by Newkirk, and also serves portions of Noble, Grant, Garfield and Osage Counties.

2.    Plaintiff RWD No. 3 is a rural water district organized under the laws of Oklahoma for the express purpose of serving in and around Kay County. RWD No. 3 provides water to household and industrial users in Kay County.

3.    Defendant City of Newkirk, is a municipal corporation which operates a for profit electric distribution operation, the Newkirk Municipal Authority, (collectively the "City") serving within and around the municipal boundaries of Newkirk. Under Oklahoma law, Newkirk competes with Kay Electric in the retail electrical market in those formally rural areas annexed by the City.

## JURISDICTION AND VENUE

4.    This is a civil action seeking damages for violation of the Sherman Act, 15 U.S.C. § 1, and the Oklahoma Antitrust Reform Act, 79 O. S. § 203. Jurisdiction as to the Sherman Act claims exists pursuant to 28 U.S.C. § 1337. As to the remaining claims, supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367 because the claims set forth are so related that they form part of the same case or controversy.

5.    This action also seeks declaratory relief pursuant to 28 U.S.C. § 2201.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(a) in that (1) the Defendants reside in the Western District of Oklahoma; (2) both Defendants are subject to personal jurisdiction in the Western District of Oklahoma; and (3) a substantial part of the events giving rise to the Plaintiffs' claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS

7.      The City sells electricity to residential, commercial and industrial customers both inside City limits and adjacent area through a municipal entity that is both self supporting and a generator of revenue for the City.

8.      The City also provides water/sewer service to residential, commercial and industrial customers in and around the City's corporate boundaries.

9.      Although not as profitable as the City's electrical services, the City owns and operates the only centralized public sewage collection and treatment system in the area.

10.     On February 12, 2007, the Commissioners of Kay County Oklahoma authorized the creation of the Kay County Justice Facility Authority (the "Authority") to begin the process of planning and constructing a new jail facility in Kay County.

11.     In February 2008 the members of the Authority recommended the purchase of property located outside the city limits of Newkirk, Oklahoma. The Authority further recommended the adoption of a county wide sales tax to fund the proposed facility.

12.     The site selected by the Authority for the jail facility lies within the exclusive service territory served by Kay Electric Cooperative.

13.     At a meeting of the Newkirk City Commissioners on September 8, 2008, Newkirk Mayor Frank Arnold explained the City's "all or nothing" policy with regard to the furnishing of services to the proposed facility:

> "I think we have made it clear that financially it would be in our best interest if we sold [the Authority] electricity. If we do not sell them electricity, we're not giving them water,

3

> we're not going to annex, were not going to give them
> sewer… we are not giving them nothing [sic]."

Sharon Rowen, *The Jail Trust Authority Discusses New Jail*, The Ponca City News, December 25, 2008 at pg. 3. (A copy of the Article is attached as Ex. "A".)

14.    On November 3, 2009, Bruce Robinson, Authority Chairman, encouraged the members of the Authority to explore all actions reasonably necessary to ensure the annexation of the proposed site by the City in order to secure the availability of all necessary services.

15.    On December 1, 2008, the Authority approved the contract to purchase the site selected for the proposed facility.

16.    On December 5, 2008, Kay Electric made a formal proposal to the Authority to provide electrical service to the proposed facility at a rate well below the rate offered by the City.

17.    On January 5, 2009, the public hearing scheduled to occur before the Newkirk City commissioners to discuss the annexation of the proposed jail facility site was cancelled. Instead, city commissioners met "unofficially" and discussed the matter of annexation privately. Scott Cloud, *City Commissioners Hear Citizens Input on Annex Action*, Newkirk Herald Journal, January 8, 2009. (A copy of the Article attached as Ex. "B".)

18.    In January 2009, exact date unknown, the Authority sent a letter to the Newkirk City Commissioners requesting copies of the policies and ordinances establishing and controlling access to the City's sewer system and seeking a listing of all

4

customers outside of the City who are served by the City's sewage system. Scott Cloud, *Commissioners Respond to Jail Trust Letter*, Newkirk Herald Journal, January 15, 2009. (A copy of the Article is attached as Ex. "C".)

19.    On January 15, 2009, the Newkirk Herald Journal newspaper, reporting on the City's response to the Authority's request for information, quoted Newkirk Commissioner A.J. Ford as stating that "I think they (authority) are exploring all their sewer options… [w]e told them all or nothing and I think they are trying to look at what might be possible without petitioning for annexation." Notably, Newkirk Commissioner Roy Chaney was quoted as stating that the Authority was "[t]rying to find a loop hole to force us to provide them sewer and I resent it. We've discussed it and made our position perfectly clear. . ."  (See Ex. "C".)

20.     On February 20, 2009, the Authority passed a resolution requesting annexation of the proposed jail site by the City. (Agenda and Unsigned copy of Proposed Resolution attached as Ex. "D".)

21.    In the Authority Meeting on February 20, 2009, discussing the Authority's request for annexation by the City, Chairman Bruce Robinson, stated that "[i]f all we needed was electricity, then the decision would have been much easier, but we needed all utilities including water, sewer, and electricity." *Jail Trust Seeks Annexation*, Newkirk Herald Journal, February 26, 2009. (A copy of the Article attached as Ex. "E".)

22.    On March 6, 2009, The Authority, at the request for changes by the City, revoked the February 20, 2009 resolution for annexation by the City and resubmitted its

request.   Rolf Clements, *Jail Authority Gives Annexation Petition Changes Approval*, Ponca City news, March 8, 2009, (A copy is attached as Exhibit "F".)

23.    In order to ensure the availability of sewer service, the Authority's requests for annexation included a statement stating that:

> "[I]t is in the best interest of the citizens of Kay County that the jail facility and all associated land be within the City of Newkirk, Oklahoma (the "City") by reason of which the City will provide the jail facility and directly associated land with ***all municipal services which include, but are not limited to, potable water, sewerage disposal, electrical power, fire protection and ambulance services… .***"

Resolution of Kay County Justice Facilities Authority, March 6, 2009. (Attached as Ex "G".)

24.    On March 9, 2009, the Newkirk City Commissioners passed a resolution scheduling a public hearing for the purpose of approving the Authority's request for annexation. (Attached as Ex. H.)

## PROCEDURAL HISTORY

25.    On March 27, 2009, Kay Electric Cooperative and Kay County Rural Water District No. 3 filed suit against the City of Newkirk seeking injunctive and declaratory relief with regard to the proposed annexation as well as for damages under the Oklahoma Antitrust Reform Act and the Federal Sherman Act. *See Petition for Declaratory Judgment and Injunctive Relief*, dated March 27, 2009. (A copy of the Article is attached as Ex. "I".)

26.    Also on March 27, 2009, the Honorable Leslie D. Page, Kay County District Judge, Temporarily enjoined the City's annexation of the jail facility site upon

application by Kay Electric Cooperative and the Kay County Rural Water District No. 3. *See* Temporary Restraining Order, dated March 27, 2009. (A copy is attached as Ex. "J".)

27.    On April 9, 2009, The Temporary Restraining Order was vacated by the Kay County District Court at the urging of the City of Newkirk and the Kay County Justice Facilities Authority, on the basis that the court lacked the subject matter jurisdiction necessary to enjoin the proposed annexation. *See* Order Vacating Temporary Restraining Order, dated April 9, 2009. (A copy is attached as Ex. "K".)

28.    On April 27, 2009, the City effectuated an ordinance "annexing" a twenty foot wide strip of state highway right-of-way leading up to and including the construction site of the new Kay County Jail Facility. But for the City's "strip annexation", the new jail facility is neither contiguous with, nor adjacent to, the City.

29.    Although a pretrial hearing had initially been scheduled in the state court lawsuit for April 30, 2010, very little discovery had been conducted and the state court had made no substantive decisions on the merits of Plaintiffs' claims against the City or the Authority, which had been permitted to intervene as a party defendant.

30.    On April 6, 2010, Kay Electric and RWD No. 3 ***dismissed*** their state court lawsuit without prejudice and filed the present action seeking damages for antitrust injuries resulting from the City's unlawful and anticompetitive practices as well as for a declaratory judgment finding the City's annexation of the jail facility serves no valid municipal purpose and is contrary to state law.

## COUNT I
## UNLAWFUL TYING OF MUNICIPAL SERVICES

31.    The allegations of the foregoing paragraphs are re-alleged and incorporated as if set forth fully herein.

32.    For over sixty years, Kay Electric Cooperative and RWD No. 3 have provided electrical and water services, respectively, to industrial and residential customers residing in Kay County, Oklahoma, but beyond the municipal boundaries of the City of Newkirk, Oklahoma.

33.    Concurrently, the City has operated a municipal service system that provides electric and water service within, and in some instances without, Newkirk's municipal limits and has not granted any other person or entity permission to provide competing services.

34.    Under Oklahoma law, the annexation by a municipality of any rural area serviced by a rural electric cooperative, operates to create a competitive market in which the existing cooperative may continue to serve in competition with the municipality, thus allowing new utility consumers to choose.

35.    In late 2008, the City of Newkirk adopted an un-promulgated "all-or-nothing" policy by which it refused to provide vital services such as water, sewer, fire, and police protection to consumers in annexed areas that refused to agree to purchase all of their services from the City.

36.    The Defendant City implemented this "all-or-nothing" policy for the purpose and with the effect of injuring competition in the retail electrical services and water services market in the newly annexed areas.

37.    At all relevant times, the City has a substantial market power in, and has achieved a monopoly in the product market of public sewage collection and treatment in the areas within, and adjacent to, the City's corporate boundaries.

38.    Potential new entrants in the market of public sewage collection and treatment face substantial economic and regulatory barriers created by the City's refusal to permit any other entity from providing competing sewer service within its corporate limits.

39.    Additionally, the areas within, and adjacent to, the City's corporate boundaries constitute a single relevant geographic market because of the high costs of constructing and maintaining sewer lines in sparsely populated areas and because those areas remain subject to annexation, and takeover, by the City.

40.    As intended by the City, the "all-or-nothing" policy has forced new consumers in recently annexed areas to purchase electrical and water services (the "tied" products) from the City at uncompetitive rates in order to ensure access to the City's public sewage system (the "tying" product).

41.    Competition in markets of retail electric and water service within the annexed growth areas has been foreclosed by the City's policy, depriving those customers of their right to choose freely between competing service providers on the basis of price and quality of service.

42.     The City's policy of requiring customers in annexed areas to purchase all of the services marketed by the City in order to obtain access to the City's public sewage system is an unlawful tying arrangement as prohibited by sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Oklahoma Antitrust Reform Act, 79 O.S. § 203.

43.     The City has engaged in the acts and practices alleged above with the specific intent of maintaining and extending its monopoly in the market for sewer service in the relevant geographic market.

44.     As a proximate and consequent result of the City's violations of Sections 1 and 2 of the Sherman Act and the Oklahoma Antitrust Reform Act, 79 Okla. Stat. § 203, Kay Electric and RWD No. 3 have been injured in their business and property in that:

a.  They have lost and continue to lose profits which they would have made but for the City's actions;

b.  They have lost and continue to lose business good will;

c.  They have suffered and will continue to suffer diminution in their going-concern value; and

d.  Their ability to serve their customers has been impaired.

## COUNT II
## ATTEMPTED MONOPOLIZATION

45.     The allegations of the foregoing paragraphs are re-alleged and incorporated as if set forth fully herein.

46.     By engaging in the policies, acts and practices alleged above, the City is attempting to monopolize the retail electrical and water service markets by refusing to

permit customers, and potential customers, of Kay Electric and RWD No. 3 access to essential sewer facilities.

47.    As a result of the policies, acts, and practices alleged above, the City has significantly injured competition in the relevant product markets of retail electric and water service in the relevant geographic market.

48.    The City adopted the policies, acts, and practices alleged above with the specific intent of using control of an essential facility to monopolize the retail electric and water service markets within the relevant geographic market in violation of Sherman Act, 15 U.S.C. § 2, and the Oklahoma Antitrust Reform Act, 79 Okla. Stat. § 203(B).  Such acts and practices by the City involve and affect interstate commerce.

49.    Given total and monopolistic control of the only public sewer system within the specified geographic market there is a dangerous probability that the City will achieve a monopoly in the retail electric and water service markets.

50.    As a proximate and consequent result of the City's wanton violations of Section 2 of the Sherman Act and 79 Okla. Stat. § 203(B), Kay Electric and RWD No. 3 have been injured in their business and property in that:

a.    They have lost and continue to lose profits which they would have made but for the City's actions;

b.    They have lost and continue to lose business good will;

c.    They have suffered and will continue to suffer diminution in their going-concern values; and

d.    Their ability to serve their customers have been impaired.

11

## COUNT III
## UNREASONABLE RESTRAINT OF TRADE

51.     The allegations of the foregoing paragraphs are realleged and incorporated as if set forth fully herein.

52.     The City possesses market power in the relevant geographic and product market.

53.     By engaging in the acts and practices alleged above, the City has unreasonably restrained trade in the relevant markets by coercing consumers in the annexed areas into purchasing all of the City's proffered services in exchange for access to the City's public sewage system, thus depriving Kay Electric, RWD No. 3 and their customers of meaningful price competition and supplier choice, in violation of the Oklahoma Antitrust Reform Act, 79 Okla. Stat. § 203(A).

54.     Because the City's "all-or-nothing" utility policy has the purpose and effect of extending the City's monopoly power in the sewage market into the retail electric and water service markets, there is no redeeming competitive rationale for such conduct, and the City's actions are *per se* unlawful.

55.     In the alternative, the City's actions are unlawful under the rule of reason analysis in that they have injured competition in the relevant markets and have raised barriers to entry that foreclose meaningful price competition and supplier choice.  There are no precompetitive virtues that justify this anticompetitive impact.

56.     As a proximate and consequent result of City's violations of 79 Okla. Stat. § 203(A), Kay Electric and RWD No. 3 have been injured in their business and property in that:

    a.  They have lost and continue to lose profits which they would have made but for the City's actions;

    b.  They have lost and continue to lose business good will; and

    c.  They have suffered and will continue to suffer diminution in their going-concern values.

**COUNT IV**
**DECLARATORY JUDGMENT UNLAWFUL ANNEXATION**

57.     The Allegations of the foregoing paragraphs are realleged and incorporated as if set forth fully herein.

58.     The new jail facility is neither adjacent to, nor contiguous with the City's corporate boundaries.

59.     Under Oklahoma law, the City lacks the delegated authority to annex any territory that is not "adjacent to or contiguous to the city". *See* 11 O.S. § 21-103.

60.     Purporting to legitimize the annexation of the new Kay County Jail Facility, the City "annexed" a twenty foot wide strip of state highway right-of-way leading to the facility's construction site.

61.     There are no residents, consumers, or other facilities located within the highway right-of-way annexed by the City which justify or provide a legitimate municipal purpose for the City's annexation.

13

62.    The City's "strip annexation" was performed solely to "authorize" the City's annexation of the jail facility for which it seeks merely the ability to profit from the sale of its municipal services.

63.    Accordingly, both the City's annexation of the jail facility as well as its "strip annexation" are without valid municipal purpose and constitute an impermissible exercise of the annexation powers delegated to it by the state of Oklahoma.

## RELIEF SOUGHT

WHEREFORE, the Plaintiffs KAY ELECTRIC COOPERATIVE and the KAY COUNTY RURAL WATER DISTRICT NO. 3, respectfully request that this Court enter judgment on behalf of the Plaintiffs:

A. Directing that Defendant CITY OF NEWKIRK pay threefold the damages determined to have been sustained by the Plaintiffs as a result of the alleged violations of the antitrust laws, as alleged in Counts I, II, and III hereof, reasonable attorneys' fees, and costs as provided for in 15 U.S.C § 15 and 79 Okla. Stat. § 205(A)(1);

B. Declare that the City's "all-or-nothing" policy by which it refuses to provide sewer service to the Plaintiffs' customers in the relevant geographic market is void as violating the federal and state antitrust laws, as alleged in Counts I, II, and III hereof;

C. Declaring that the City's "strip annexation" of the twenty foot wide section of state highway right-of-way lacks any valid municipal purpose and is void as

violating 11 O.S. § 21-103, or in the alternative, certifying the issue to the Supreme Court of Oklahoma;

D.  Declaring that the City's annexation of the new Kay County Justice Facility site was solely to enable the City to profit from the exclusion of competition in the provision of municipal services beyond its boundaries and is without valid municipal purpose and is void as violating 11 O.S. § 21-103;

E.  In the alternative, the Plaintiffs request that the Court certify the issue to the Supreme Court of Oklahoma of whether the City of Newkirk's "strip" annexation lacks a valid municipal in violation of 11 O.S. §21-103; and

F.  Awarding the Plaintiffs such other relief as the Court may deem just and proper.

Respectfully Submitted,

s/Pete G. Serrata III
Larry Derryberry, OBA No. 2318
Douglas A. Rice, OBA No. 16297
Pete G. Serrata III, OBA No. 21352
DERRYBERRY & NAIFEH, LLP
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
(405) 528-6569 – Telephone
(405) 528-6462 – Facsimile
drice@derryberrylaw.com
pserrata@derryberrylaw.com

-    and   -

Jonathan C. Ihrig, OBA No. 4539
Andrew M. Ihrig, OBA No. 21233
IHRIG LAW FIRM
P.O. Box 389
Blackwell, OK 74631
(580) 363-4300 – Telephone

15

(580) 363-4308 – Facsimile
jcilaw@kskc.net

**ATTORNEYS FOR PLAINTIFFS**
**KAY ELECTRIC COOPERATIVE**
**AND KAY COUNTY RURAL**
**WATER  DISTRICT NO. 3.**

**Jury Trial Demanded**