IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) KAY ELECTRIC COOPERATIVE, an Oklahoma Rural Electric Cooperative; and (2) KAY COUNTY RURAL WATER DISTRICT No. 3, an Oklahoma Rural Water District,<br><br>              Plaintiffs,<br><br>vs.<br><br>(1) THE CITY OF NEWKIRK, Oklahoma, a Municipality; and (2) THE NEWKIRK MUNICIPAL AUTHORITY, a public trust,<br><br>              Defendants. | Case Number CIV-10-347-C |

## MEMORANDUM OPINION AND ORDER

Plaintiffs' Complaint alleges violations of the Sherman Act, 15 U.S.C. §§ 1 and 2, as well as the Oklahoma Antitrust Reform Act, 79 Okla. Stat. §§ 201 et seq. Plaintiffs also seek a declaration that Defendant City of Newkirk's condemnation of a certain parcel of land is contrary to Oklahoma law. Defendants filed the present Motion to Dismiss for Failure to State a Claim.

### BACKGROUND

Plaintiffs are an Oklahoma rural electric cooperative and a rural water district who operate in and around Kay County, Oklahoma. Defendant City of Newkirk is a municipal corporation that operates an electric distribution operation, Defendant Newkirk Municipal Authority. Defendant City also provides water and sewer service to consumers in and around the city limits and owns the only sewage collection and treatment system in the area.

According to Plaintiffs' Complaint, a site was selected for a new county jail facility located outside the city limits of Newkirk, Oklahoma. Defendant City refused to provide water or sewage treatment services for the new jail facility unless the facility also contracted with Defendant City to provide electric utility services to the jail. On April 27, 2009, Defendant City annexed a strip of land adjacent to the new jail facility site.

Plaintiffs subsequently filed suit, alleging that Defendants' actions violated the Sherman Act, 15 U.S.C. §§ 1 and 2, by impermissibly tying the provision of sewer services to the provision of water and electric services and by attempting to monopolize the retail electric and water service markets. Plaintiffs also allege that this same behavior violates the Oklahoma Antitrust Reform Act, 79 Okla. Stat. §§ 201 et seq. In addition, Plaintiffs seek a declaration that Defendant City's annexation is unlawful.

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court must accept the complaint as true and must construe all facts in the light most favorable to the plaintiff. Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). Consistent with the liberal pleading standards of Fed. R. Civ. P. 8(a)[1], the plaintiff need not plead detailed factual allegations, but the face of the complaint must indicate a plausible right to relief that is not simply speculative. James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270 (11th Cir.

---

[1] Fed. R. Civ. P. 8(a) provides that "A pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." This has been interpreted to require the complaint to provide sufficient notice to the defendant regarding what the plaintiff is claiming and the grounds upon which the claim is made. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

2008). A complaint containing only conclusory allegations without any factual support will not survive a motion to dismiss. Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

## DISCUSSION

**A. Plaintiffs' Federal Antitrust Claims**

The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. The Act further prohibits any actions to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2.

The state action immunity doctrine shields from liability "anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." City of Lafayette, La. v. La. Power & Light Co., 435 U.S. 389, 413 (1978). In order for this immunity to apply, "the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'" and "the policy must be 'actively supervised' by the State itself." Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 104 (1980) (quoting City of Lafayette, 435 U.S. at 410)). The first prong of this test is satisfied when anticompetitive conduct is a foreseeable result of legislative authorization. Town of

3

Hallie v. City of Eau Claire, 471 U.S. 34, 42 (1985). "In cases of municipal action, the second prong of active supervision is satisfied if the municipality itself supervises the conduct." S. Disposal, Inc. v. Tex. Waste Mgmt., a Div. of Waste Mgmt. of Tex., Inc., 161 F.3d 1259, 1262 (10th Cir. 1998).

Defendants cite a number of statutory provisions that they contend evidence a clearly articulated state policy to displace competition with regulation. Pursuant to 11 Okla. Stat. § 22-104, municipalities have the power to "raise the monies to establish and maintain public utilities . . ." and to

> [s]ell or lease to any consumer or corporation, within or without its boundaries, the commodities and services supplied by such municipally owned or controlled public utility . . . and to enter into such short- or long-term contracts, agreements, and stipulations and do all things necessary and proper to further the capability of the municipality . . . to provide said commodities and services as may be deemed appropriate by the governing body of the municipality.

Such a broad statement of authority evidences the state's intent to replace competition with regulation in the provision of public utility services in Oklahoma. Anticompetitive conduct is clearly a foreseeable result of such legislative authorization.

Plaintiffs argue that subsequent statutory provisions indicate that Oklahoma is moving away from the governmental regulation of public utilities, opting instead to encourage competition in the field. In support of this proposition, Plaintiffs cite the Electric Restructuring Act of 1997 (the Act), 17 Okla. Stat. § 190 et seq.

> The purpose of this act is [to] provide for the orderly restructuring of the electric utility industry in the State of Oklahoma in order to allow direct access by retail consumers to the competitive market for the generation of

4

electricity while maintaining the safety and reliability of the electric system in the state.

. . .

Restructuring of the electric utility industry to provide greater competition and more efficient regulation is a national trend and the State of Oklahoma must aggressively pursue restructuring and increased consumer choice in order to provide electric generation service at the lowest and most competitive rates.

17 Okla. Stat. § 190.2 (footnote omitted). The Act set up a Joint Electric Utility Task Force, which was intended to study all relevant issues relating to the restructuring of the electricity utility industry. § 190.4(A). A process was to be established "whereby all retail consumers are permitted to choose their retail electric suppliers by July 1, 2002." § 190.4(B)(3). During the transition to a competitive market, the Corporation Commission was expressly prohibited "from promulgating any rules or issuing any orders relating to the restructuring of Oklahoma's electric utility industry without prior express authorization by the Oklahoma State Legislature." § 190.4(A).

It is clear that, contrary to the expressed goals of the Act, Oklahoma consumers are not currently able to choose their retail electric suppliers. For whatever reason, no implementing rules or regulations actually serving to restructure Oklahoma's electric utility industry were ever passed. The legislature did declare a moratorium on all municipal condemnation proceedings of an electric cooperative's facilities effective until the enactment of electric restructuring enabling legislation. 11 Okla. Stat. § 21-222. This alone, however, does not negate the previous legislative authorization that clearly articulates a policy favoring

regulation over competition in the provision of public utilities. In the absence of any implementing legislation, the Electric Restructuring Act of 1997 is ineffective to replace regulation with competition and the policy announced in 11 Okla. Stat. § 22-104 is the operative policy statement. Thus, the Court is bound to conclude that the first prong of the state action immunity doctrine is met.

With respect to the second prong, it is clear to the Court, from a thorough reading of Plaintiffs' Complaint, that the municipality supervises the provision of utility services. As a result, Defendants are entitled to state action immunity from the federal antitrust laws. Plaintiffs' federal claims must, therefore, be dismissed with prejudice.

**B. Plaintiffs' State Law Claims**

In addition to their federal antitrust claims, Plaintiffs also allege a violation of the Oklahoma Antitrust Reform Act, 79 Okla. Stat. § 203(A), and seek a declaration that Defendant City's annexation of the land at issue in this case was contrary to Oklahoma law. Plaintiffs' Complaint asserts that the Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

Federal law provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The statute further provides that "district courts may decline to exercise supplemental jurisdiction over a claim

under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Because Plaintiffs' federal claims are dismissed before trial and before the parties have expended considerable time and effort in preparing their cases, the Court finds it appropriate to dismiss Plaintiffs' supplemental claims as well.

## CONCLUSION

As set forth more fully herein, Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 20) is GRANTED. Plaintiffs' federal antitrust claims (Counts I and II) are DISMISSED WITH PREJUDICE. Plaintiffs' state law claims (Counts III and IV) are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 16th day of August, 2010.

ROBIN J. CAUTHRON
United States District Judge